# N. Y. COMMON PLEAS.

## In the Matter of BENJAMIN PAGE, a lunatic.

*Lunatic — proper party to be appointed committee of the estate and person —
heirs or next of kin — Appeal.*

The selection of a committee of a lunatic by a referee appointed for that
purpose, is a matter of judicial discretion with which the court should
not interfere, unless he has selected an improper person or one who is
disqualified, or one whose situation is such as to warrant the belief that
the interests confided to him may not be properly attended to.

Whether a relative or stranger is to be preferred, should be determined in
the particular case, in view of all the circumstances, and not by the
application of any general rule, for there is none except that *heirs* or
*next of kin* are *not disqualified* if the court or its officer in the exercise
of a sound judicial discretion thinks proper to appoint one.

*Matter of Owens* (5 *Daly*, 288) explained and limited.

*It seems* that an appeal may be taken from an order confirming the report
of a referee as to who was a suitable person to be appointed a committee
of the person and estate of a lunatic.

*General Term, April,* 1877.

THIS is an appeal from an order, confirming the report of a
referee, to whom, by an order of this court, it was referred to
inquire and report, among other things, who was a suitable
and proper person to be appointed a committee of the person
and estate of the above-named Benjamin Page, a lunatic.
The applicants for such appointment, before said referee, were
two, to wit: Mr. Stephen H. Olin and Mr. Robert L. Keen.
Mr. Olin is in no way related to the lunatic, Mr. Keen is
his first cousin. The other relatives of the lunatic are Mrs.
Croghan and Mrs. Brown, aunts of the whole blood, and Mrs.

Clarke, Mrs. Madeira, Mrs. Brent, Mrs. Blackwell and Dr. David Page, aunts and uncle of the half blood. The lunatic is unmarried and has no father, mother, children brothers or sisters living, and there are no descendants of any such child, brother or sister. Mrs. Brown resides abroad, has not appeared in this matter, and takes no part therein. Mrs. Croghan is the petitioner, and alone requests the appointment of Mr. Olin. All the other relatives unite in asking to have Mr. Keen appointed such committee.

The referee reported in favor of the appointment of Mr. Olin.

The confirmation of this report was opposed by the other parties to the proceedings, and in their behalf it was asked that the motion for that purpose should be denied; and that an order might be entered appointing Mr. Keen such committee. The motion to confirm was granted, and an order was entered confirming the report.

VAN BRUNT, J., in confirming the report says: "Under the decision in the case of *Matter of Owens* (5 *Daly*, 288) I am compelled to confirm this report, but I cannot do so without expressing my dissent from the doctrine enunciated in that case, that next of kin are excluded from appointment as committees of person or estate of lunatics. I don't think the authorities will support such a doctrine."

*D. S. Ritterband*, for appellants. *Michael H. Cardozo*, of counsel.

I. The order is appealable (*sec.* 1, *ch.* 270, *page* 592, *Laws of* 1854).

II. The learned referee, in his opinion, says: "No question is raised by counsel as to the integrity, capacity or fitness of either of the gentlemen named, and the only question which arises is as to the rule which should guide the referee in the selection of a committee." The referee cites a case, entitled, *In the matter of Owens, an Idiot* (5 *Daly*, 288), and

from that authority; and the cases in the opinion therein referred to, deduces and evokes a rule or principle that a relative, as such, is excluded from an appointment as such committee; and, in view of this, he reports in favor of the appointment of Mr. Olin as the committee of the estate and person of the lunatic.

We submit that the conclusions which the referee seeks to draw from the two cases in this court, and by which he insists he is governed, were not of controlling authority on the question now before the court, and certainly do not decide that a relative, as such, is excluded from an appointment as such committee.

We insist that a relative is always preferred as the committee of the estate and person of a lunatic, rather than a stranger (*Matter of Livingston*, 1 *Johns. Ch.*, 436; *Lamoree's Case* [1860], 11 *Abb.* [*N. S.*], 274; *In the Matter of Taylor* [1842], 9 *Paige*, 611; *Crary's Spec. Pro.*, vol. 2, ch. 18, *p.* 15 [*2d ed.*]; *Barbour's Chancery Practice*, vol. 2, *p.* 236, *book V, ch.* 6, [*2d ed.*]; *Wait's Practice*, vol. 6, *p.* 426; *Hoffman's Chancery Practice* [1839, 1st ed.], vol. 2, *pp.* 258, 260; 1 *Bouv. Law Dic., p.* 297).

From England comes our law in relation to persons of unsound mind; the principles there determined, the rules there established, in the absence of legislation, should govern here. The authorities in the courts of that country unite in giving the preference to a relative (*Elmer on Practice in Lunacy* [5th ed.], 1872, *p.* 25; *Phillipps on Lunacy, p.* 281; *Shelford on Lunacy, p.* 131; 2 *Law Lib., p.* 83; *Bacon's Abridgement* [*Bouvier's ed*]., vol. 5, *p.* 12), where it is said, "In the appointment of committees, relations, unless there is some specific objection, are preferred to strangers. It is no objection in modern practice, though it was so formerly, that the committee of the person is entitled, as heir-at-law, upon the death of the lunatic, to his real estate. That he is the next of kin to the lunatic, and may come in for a share of the personal property under the statute of distributions, has

Matter of Page.

never been considered as an objection." (*Stock on Non Compos Mentis*, *p.* 121, *et seq*; 9 *Law Lib.* [*N.S.*], II, *p.* 71; 1 *Fonblanque's Eq.*, 53 [*note o*]; *Petersdorff Abm.* [2*d. ed.*], *vol.* 5, *p.* 409 [1], where it is said that "relations are in general appointed in preference to strangers, unless some specific objection be urged)" (*Dormer's Case* [1724], 2 *Peere Wms.*, 262.) Here the uncle of the lunatic was appointed committee. (*Ex parte Ludlow* [1731], *id*, 635; *Ex parte Lyne* [1735]. *Cas. Temp. Talb.* 142.) The next of kin was, together with her husband, appointed committee of the lunatic's estate. (*Ex parte Grimstone* [1772], *Amb.*, 706.) The heirs-at-law of the lunatic were intrusted with the custody of his estate. (*Ex parte Cockayne* [1802], 7 *Vesey*, 591 *and note.*) The lunatic's brother of the half blood was made committee of his estate and person. (*Ex parte Le Heup* [1811], 18 *Vesey*, 221.) Where an uncle of the lunatic was made committee. (*Ex parte Pickard* [1814], 3 *Ves. & Bea.*, 127.) Here the lunatic's sister was one of the committee. (*In re Lord Bangor* [1818], 2 *Molloy* [*Ir. Ch.*], 518; *Ex parte Farron; In re Adams* [1829], 1 *Russ and Mylne*, 112.) In this case the lord chancellor granted the application of the sister of a lunatic and her husband to be appointed committee of the person and estate of the lunatic. (*In the Matter of the Earl of Launsborough* [1826], *Lloyd & Goold Temp. Plunk.*, 503.) Here the heir-at-law of the lunatic was made committee of his estate. (*In re Hussey* [1828], 1 *Molloy*, 226; *In re Persse* [1828], 1 *Molloy*, 439; *In re Blair* [1836], 1 *Mylne & Craig*, 300.) The heir-at-law of the lunatic was committee of her person and estate. (*In the Matter of Webb* [1846], 2 *Phillips*, 10, 532; *Re Watkins* [1846], 1 *Cott*, 225; *In re Meux* [1818], 2 *id.*, 106, 107 [*n.*]; *Leaf* agt. *Coles* [1852], 1 *DeG., McN. & G.*, 417.) Where it appears that a brother of the lunatic was appointed the guardian of his person and receiver of his estate. (*Ex parte Mount* [1851], 21 *Law Jour. Rep.* [*N. S.*], *Ch.*, 221.) The heir-at-law, who, together with one other person, was also

next of kin, was committee of the person of the lunatic. (*In re Pugh* [1853], 3 *DeG., McN. & G.,* 416.) Where the father was made committee of the person and estate of his lunatic son. (*In re French* [1868], 37 *Law Jour. R.* [*N. S.*], 537.) The sister of a lunatic and her husband were appointed such committee. (*In re Strickland* [1871], *L. R.,* 6 *Ch. Ap.,* 226.) The heiress-at-law and next of kin were made such committee. (*In re Wynne* [1872], *L. R.,* 7 *Ch. Ap.,* 229.) The lunatic's wife was made committee. (*In re Scarlet* [1873], 8 *id.,* 739.) The committee of the person was the heiress-at-law and sole next of kin of the lunatic, and the committee of the estate was their son. Elmer says: "Relatives are preferred to strangers, unless there is some specific objection to them; the former rule of excluding them on the ground of interest being now disregarded." In *Ex parte Cockayne*, lord ELDON held that the old rule that the next of kin of a lunatic, if entitled to his estate upon his death, was not to be committee of the person, is not now adhered to. This is not only exploded, but, consanguinity, though it confers no positive right, is now always considered as a considerable recommendation in the selection of a committee (*Perkin's note to the case, citing Lady Mary Copes,* 2 *Cha. Cas.,* 239).

III. So much of the order from which this appeal is taken should be reversed; and as all the facts are before this court, and there is no dispute as to the fitness of Mr. Robert L. Keen, the person proposed by the relatives of the lunatic, an order should be entered appointing him the committee of the estate and person of the lunatic upon his executing such a bond as the referee has reported to be proper, and under the conditions recommended by the referee.

*G. L. Rives* for respondent.

I. The order is not appealable (*Laws of* 1874, *chap.* 446, *tit.* 2, *sec.* 1; *Matter of Mason,* 1 *Barb.,* 436; *Matter of Owens,* 5 *Daly,* 288; *Matter of Griffin,* 5 *Abb.,* [*N. S.*], 96;

*Black's Case*, 18 *Penn. State Rep.*, 434; *Lamoree's Case*, 11 *Abb.*, 274; *Richard's Case*, 15 *Abb.* [*N. S.*], 6).

II. The court will not disturb the referee's report, unless it appears that it has appointed an improper person (*Creuze* agt. *Bishop of London*, 2 *Brown's C. C.*, 253; *Garland* agt. *Garland*, 2 *Vesey, Jr.*, 137; *Bonersbank* agt. *Collasseau*, 3 *Vesey*, 164; *Thomas* agt. *Dawkins*, 3 *Brown's C. C.*, 508; *S. C.*, 1 *Vesey, Jr.*, 452; *Tharpe* agt. *Tharpe*, 12 *Vesey*, 317; *Matter of the Eagle Iron Works*, 8 *Paige*, 385; *In re Lord Bangor*, 2 *Malloy*, 519; *Lady Mary Cope's Case*, 239; *Shelford on Lunacy*, 136; *Edward's on Referees*, 317, 599).

III. The court will not inquire into the referee's reasons.

IV. The referee in this case exercised his discretion.

V. The rule adopted by the referee was correct (*Matter of Owens*, 5 *Daly*, 288; 1 *B'lk Comm.*, 305; *Dormer's Case*, 2 *P. Wms.*, 262; *Ex Parte Cockayne*, 7 *Ves.*, 591; *Ex Parte Ludlow*, 2 *P. Wms.*, 635; *Matter of Livingston*, 1 *Johns. Ch.*, 436; *Lady Mary Cope's Case*, 2 *Ch. Cas.*, 239; *S. C.*, 1 *Eq. Ca., Abr.*, 277; *Oxenden* agt. *Lord Compton*, 2 *Vesey, Jr.*, 69; *S. C.*, 4 *Brown's C. C.*, 231; *Neal's Case*, 2 *P. Wms.*, 544; *Ex parte Chumley*, 1 *Vesey, Jr.*, 296; *Matter of Taylor*, 9 *Paige*, 611; *Matter of Colah*, 3 *Daly*, 529).

VI. If the court reverses the order, it should refer it back to the referee (*Shelford on Lunacy*, 136; *Edward's on Referees*, 318, 599).

VII. The order appealed from should be affirmed with costs.

DALY, *Ch. J.*— Where an unobjectionable person has been appointed by the referee, it is not the practice of the court to disturb the appointment, upon the ground that a relative ought to have been selected, or the converse, or that a better selection from among the persons named might have been made. The selection of the committee, by the referee, is a matter of judicial discretion, with which the court should not interfere unless he has selected an improper person, or one

who is disqualified, or one whose situation is such as to war-
rant the belief that the interests confided to him may not, be
properly attended to (*Creuzer* agt. *Bishop of London*, 2
*Brown's C. C.*, 253 ; *Thomas* agt. *Dawkins*, 3 *id.*, 508 ; *id.*,
1 *Ves. Jr.*, 452 ; *In the Matter of the· Eagle Iron Works*, 8
*Paige*, 386).

These were cases·of the appointment of a receiver, but
the rule is the same in respect to the appointment of a com-
mittee of a lunatic (*Lady Mary Cope's Case*, 1 *Eq. Ca. Ab.*,
277, *sd.* 3 ; *In re Lord Bangor*, 2 *Molloy*, 219).

If the referee had, in the exercise of his discretion, selected
Mr. Olin instead of Mr. Keen, there would be no ground for
interfering ; but it is evident, from the referee's opinion, that
he exercised no discretion in respect to Mr. Keen, that being
a first cousin of the lunatic, he regarded him as excluded
from appointment as a committee under, as he said, the prin-
ciple of the decision of this court (*In the Matter of Owens*,
5 *Daly*, 288). It was certainly not my intention to hold in that
case that a relative who may be pecuniarily benefited by the
lunatic's death is disqualified from being appointed the com-
mittee of his estate ; but, in looking at the language I used,
I can see that it may well have misled and conveyed that
impression to the referee. I meant to say that the court
would exercise circumspection and care in appointing those·
who might be benefited by the lunatic's death, and whose
intent and disposition it might be to lessen the lunatic's com-
forts, that his estate might be diminished as little as possible ;
not, however, that they were, for this reason or apprehension,
disqualified, which would have been disregarding a long line
of cases in which relatives have been appointed from justice
DORMERS' case (2 *P. Wm.*, 263) to the present day. The rule
is not that the relatives are to be preferred to strangers, nor
strangers to relatives, but that the court, in the particular
case, is to do that which is best for the lunatic, keeping in
view the possibility of his recovery. "It is his benefit and
comfort I am to take care of" said lord MACCLESFIELD in

Matter of Page.

justice DORMERS, " and not heap up wealth for the benefit of his administrators and next of kin." Where the custody of the person and estate is to be united in the same committee, a relative may take more interest in looking after the lunatic's welfare and comfort, and feel more sympathy for him than a stranger would do. But whether a relative or stranger is to be preferred should be determined· in the ·particular case in view of all the circumstances, and not by the application of ·any general rule, for·there is none except that heirs or next of kin are not disqualified if the court or its officer in the exercise of a sound judicial discretion think proper to appoint one. Mr. Olin is a gentleman known to the court, and one in every way qualified for the discharge of such trust and I feel very reluctant to interfere with his appointment. It is, however, said in the referee's opinion that no question was raised at the hearing as to the integrity, capacity or fitness of either of the gentlemen named and as a large number of the relatives desired the appointment of Mr. Keen, it may be, for all that we know, that the referee, in the exercise of his discretion, would have appointed him had he not considered him disqualified under the construction which the referee gave to our decision in *The Matter of Owens*. I think, therefore, that it will be better to refer the matter again to the referee that he may be at liberty to select Mr. Keen if, in the exercise of his discretion, he thinks it more judicious to do so.

VAN HOESEN, J., concurred.